SARTAIN, Judge.
This litigation arises out of the surgical implantation of a pacemaker. The defendants are Stimulation Technology, Inc., (Stimulation), Touro Infirmary Hospital and Drs. Warren L. Gottsegen, Dennis M. L. Rosenberg, Raja Dhurandhar and F. J. Valen. The trial court sustained peremptory exceptions of prescription as to each of these defendants except Stimulation. This appeal followed. We reverse in part and affirm in part.
On September 13, 1974 Dr. Gottsegen, assisted by Dr. Valen, performed the surgical implantation on plaintiff at Touro Infirmary. Approximately eight to ten days later plaintiff went to the emergency room at Touro because her stomach was “jumping” and a wire from the pacemaker had pierced the skin below the breast and there was bleeding. Dr. Rosenberg surgically removed the pacemaker on October 9, 1974.
On October 8, 1975 plaintiff instituted a products liability action against Stimulation, the manufacturer, and unknown John Doe defendants averred to be the former’s franchise dealers, agents or salesmen. Plaintiff amended her petition on October *774 26,1976 to assert malpractice claims against Touro Infirmary, Drs. Dhurandhar, Rosenberg, and Gottsegen. Dr. Valen was added as an additional defendant by plaintiff’s second supplemental and amended petition which was filed on February 17, 1977. Plaintiff’s pleadings were further enlarged on March 14, 1978 to allege that the above-named doctors were also agents and/or representatives of Stimulation.
For the purposes of this opinion we consider one of the crucial dates to be October 9, 1974, the date the pacemaker was removed from plaintiff. On this date prescription in medical malpractice claims was governed by C.C. art. 3536. R.S. 9:5628 (Acts 1975, No. 808 and Acts 1976, No. 214) also provides for a one-year prescriptive period but incorporates the earlier jurisprudential rule “or within one year from the date of such discovery.” While some of the claims herein were filed after the effective date of the statute, its retroactive application is not an issue because the same result follows. The question presented herein is when did plaintiff have knowledge, i. e., discover the alleged acts of neglect that form the basis of her malpractice claims.
As a general rule prescription begins to run when plaintiff has actual or constructive knowledge of the alleged tortious act. Dauzat v. St. Paul Fire & Marine Insurance Co., 336 So.2d 540 (La.App. 3rd Cir. 1976); Duhon v. Saloom, 323 So.2d 202 (La.App. 3rd Cir. 1975). On constructive notice the court in Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 (1970), the court said: “. .. Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry, is sufficient to start the running of prescription.”
On the question of constructive notice and the obligation of the tort victim to make inquiry, it has been held that prescription does not run against one who is ignorant of the existence of such facts as would entitle him to bring a malpractice action, as long as such ignorance is not willful and does not result from his own neglect. Young v. Clement, 367 So.2d 828 (La.1979); Henson v. St. Paul Fire & Marine Ins. Co., 363 So.2d 711 (La.1978). With these rules in mind we turn to the facts in the matter before us.
Shortly after the pacemaker was removed plaintiff received a statement for services rendered from Drs. Rosenberg and Gottse-gen which bore the notation “10/9/74 Removal of nonfunctioning pacemaker.” From this statement she concluded that her problem stemmed from a defective pacemaker and it was for this reason that her initial suit was only against its manufacturer, Stimulation.[1] She contends that it was not until February 26, 1976, when she was advised by counsel for Stimulation, that she learned that the severance of the wire from the body of the pacemaker was possibly due to its improper implantation. She also asserts that it was not until sometime in October of 1976 that Dr. Dhurandhar advised her along the lines of Dr. Rosenberg’s affidavit, which in pertinent part stated:
“(2) The term ‘non-functioning pacemaker’ meant that the pacemaker electrodes were not stimulating the heart as intended but had apparently become dislodged and were stimulating the diaphram. The phrase in no way was intended to mean that the pacemaker was not functioning properly or was defective in any manner but was meant only that the catheter had become dislodged from its proper position.”
Thus, she urges that her successive supplemental and amended petitions all filed within a year of February 26, 1976 against Touro and the defendant doctors were timely-
These defendants, on the other hand, contend that the detachment of the wire, its protrusion through the skin, and stimula *775 tion of the diaphram by the electrodes were sufficient occurrences to put her on notice to make inquiry and thus commenced the running of prescription.
Plaintiff takes the position that she took at face value and relied, on the notation in the statement “Removal of non-functioning pacemaker” and saw no need to make further inquiry. The record also reflects that plaintiff had only a sixth-grade education in Nicaragua and a limited knowledge of the English language. Under these circumstances we find her reliance on the statement to be reasonable. Stated another way, the delay in acquiring such facts as would entitle her to bring a malpractice suit was not the wilful result of her own ignorance and neglect. Young v. Clement and Henson v. St. Paul Fire & Marine Insurance Company, above. However, for reasons hereinafter stated, this contention of plaintiff does not avail against defendants, Touro Infirmary and Dr. Dhurandhar.
The record before us consists of the pleadings, two depositions of plaintiff, and affidavits of the defendants. The pleadings clearly reflect that the claims against all of the defendants except Stimulation had prescribed. The burden to prove otherwise rests with the plaintiff. Duhon v. Saloom, 323 So.2d 202 (La.App. 3rd Cir. 1975); Dauzat v. St. Paul Fire & Marine Insurance Co., 336 So.2d 540 (La.App. 3rd Cir. 1976).
Plaintiff’s claim against Dr. Dhu-randhar, who treated her for heart trouble and high blood pressure and recommended the use of a pacemaker, is based on the allegation that he failed to warn her of the inherent risks involved. This allegation is obviously concerned with the non-functioning aspect of a pacemaker for surely it cannot be construed that “advised consent” encompasses the possibility of negligent implantation on the part of another physician. Dr. Dhurandhar had nothing to do with the surgical implantation or removal of the pacemaker. Accepting as true the assertion that a pacemaker may well not function properly and may have to be removed, that this is a risk involved in its use, and that Dr. Dhurandhar was obligated to advise plaintiff accordingly, this risk became apparent on October 9, 1974. Her claim against this defendant on October 26, 1976 had clearly prescribed. The notation on Drs. Rosenberg’s and Gottsegen’s statement could not have misled her.
The claim against Touro Infirmary must be based on some type of solidary liability between this and the other named defendants. None is shown in the record. Stimulation is the manufacturer and the doctors are individual practitioners. The record, except for the broad allegations in plaintiff’s petitions, fails to establish any type of agency, representative, or employment relationship between Touro Infirmary and the other named defendants. These allegations are insufficient to overcome the unrebutted affidavits of the defendants to the contrary. Her claim against this defendant on October 26, 1976 was also untimely.
For these reasons the judgment of the district court insofar as the same sustained peremptory exceptions of prescription on behalf of defendants Drs. Warren L. Gott-segen, Dennis M. L. Rosenberg and F. J. Valen is reversed and said exceptions are overruled. In all other respects the judgment of the district court is affirmed. All costs relating to this appeal are assessed against the parties in the proportions of one-third against plaintiff and two-thirds against defendants, Drs. Gottsegen, Rosenberg and Valen. All other costs are to await a final determination on the merits.

REVERSED IN PART, AFFIRMED IN PART.

. The admittance record at Touro Infirmary under the category of “Provisional Diagnosis” also contains the statement: “Pace-Maker Failure.”